# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 05-289 (DSD/SRN |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Joseph Anthony Roberson, | |
| Defendant. | |

_____

Richard A. Newberry, Jr., Assistant U.S. Attorney, on behalf of Plaintiff.

Scott F. Tilsen, Esq., and Lyonel Norris, Esq., on behalf of Defendant

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

        The above entitled matter comes before the undersigned United States Magistrate Judge  on the

following pretrial motions of Defendant Joseph Anthony Roberson:  Motion to Suppress Evidence

Obtained as a Result of Search and Seizure (Doc. No. 20); Motion to Suppress Statements,

Admissions, and Answers (Doc. No. 21); and Motion to Suppress Evidence (Doc. No. 23).[1]  This

matter is set to be tried before the Honorable David S. Doty, United States District Court Judge for the

District of Minnesota, on February 27, 2006.  This case has been referred to the undersigned for

resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set

_____

        [1] The Defendant's non-dispositive motions (Doc. Nos. 13-14, 16, and 18-19) are addressed in
a separate Order.

forth below, this Court recommends that Defendant's motions to suppress evidence (Doc. Nos. 20 and 23) and to suppress statements (Doc. No. 21) be denied.

## I.   PROCEDURAL HISTORY

On September 8, 2005, a one count indictment was filed charging Defendant Joseph Anthony Roberson ("Defendant Roberson") with one count of being a Felon in Possession of a Firearm in violation of Title 18 U.S.C. § 922(g)(1).  (See Indictment, (Doc. No. 1)).

At the criminal motions hearing, Defendant was present and represented by counsel.  Detective David Giguere testified on behalf of the Government.  Government Exhibits 1 through 4 were received into evidence.  (See Exhibit List, Gov. Ex. 1, Search Warrant Application and Supporting Affidavit; Gov. Ex. 2, CD recording of June 13, 2005 Interview; Gov. Ex. 3, copy of Miranda rights card used during interview; Gov. Ex. 4, Transcript of June 13, 2005 Interview).

Defendant moves to suppress the statements he made during the interview on June 13, 2005 (Doc. No. 21), and to suppress evidence seized pursuant to a search warrant (Doc. No. 20 and 23). At the motions hearing, Defendant's attorney represented that the motions to suppress evidence (Doc. Nos. 20 and 23), should be considered as duplicate motions.

## II.   FINDINGS OF FACT

Detective David Giguere ("Detective Giguere"), of the Hennepin County Sheriff's Department, testified on behalf of the Government at the criminal motions hearing.  Detective Giguere has worked with the Sheriff's Department since 1980, and became a detective in 1997.  (Test. of Detective Giguere, January 18, 2006, ("Giguere Test."); Gov. Ex. 1, Search Warrant Application and Supporting Affidavit ("Gov. Ex. 1")).  In that capacity, Detective Giguere became familiar with the case involving Defendant

Roberson.   On June 13, 2005, Detective Giguere participated in the execution of a search warrant at Defendant's residence.

**The Search Warrant**

On June 10, 2005, Detective Giguere submitted an application and supporting affidavit for a search warrant for an address on Girard Avenue N., in Minneapolis, Minnesota ("Girard Ave. address" or "Girard Ave. residence").  (Gov. Ex. 1).  The purpose of the search warrant was to search for and seize controlled substances, packaging equipment, documents, monies, and other evidence of controlled substances, as well as firearms.  The search warrant was issued on June 10, 2005, and executed on June 13, 2005.  (Gov. Ex. 1).  The supporting affidavit to the search warrant application sets forth the facts related to the investigation.  (Id.).

During the 72 hours prior to the search warrant application, a Confidential Reliable Informant ("CRI") had contacted Detective Giguere with information relating to Defendant Roberson.  Detective Giguere, as well as other Hennepin County Sheriff deputies, had had previous contacts with the CRI. The CRI had provided corroborated information in the past, and had testified in court with information concerning an investigation that resulted in the indictment of several defendants.  The CRI had also made at least two controlled purchases of illegal narcotics under the direction and control of law enforcement during the past year.  In addition, information provided by the CRI had led to the arrest and conviction of at least ten people in federal court, as well as the seizure of illegal narcotics, weapons, and criminal proceeds.

The CRI informed Detective Giguere that, within the past 72 hours, he/she had been in Defendant Roberson's home and had observed one or two ounces of crack cocaine in a bag on the bed

in the upstairs bedroom, and had seen Defendant Roberson in possession of an AK47 High Powered semi-automatic rifle which was loaded with a 30 round magazine. The CRI told Detective Giguere that Defendant Roberson was a distributor of crack cocaine in the Minneapolis area.

Detective Giguere learned that the CRI had known Defendant Roberson for several months. He positively identified Defendant Roberson through a booking photo as the individual he saw in possession of the gun and the crack cocaine. The CRI informed Detective Giguere that Defendant lived at the Girard Ave. address, in Minneapolis, Minnesota.

A check of Defendant's prior jail records revealed that he provided that same Girard Ave. address as his home when he was last arrested in April 2005. A check with the Minnesota Department of Motor Vehicles revealed that Defendant Roberson's driver's license was issued to him at that same Girard Ave. address.

The CRI also directed Detective Giguere, in an unmarked police car, to Defendant Roberson's home where he had seen the contraband. The address of that home was the same Girard Ave. address. The CRI also pointed out a white Monte Carlo parked in front of the residence as a vehicle which he had observed Defendant Roberson drive in the past.

Based on this information, Detective Giguere opined that there was probable cause to believe that the Girard Ave. residence contained controlled substances, evidence of controlled substances, and/or firearms. Based on Detective Giguere's training and experience, he knew that people involved in the distribution of crack cocaine often possess weapons as well. In addition, Detective Giguere knew, based on his experience, that drug dealers often attempt to destroy the evidence if given a chance, and a fast, unannounced entry provided more surprise and increased the safety for officers executing a search

warrant.   As a result, Detective Giguere requested a search warrant for the Girard Ave. address allowing for an unannounced entry.

The search warrant was executed on June 13, 2005, around 8:45 a.m.  Defendant was present at the time.   During the execution of the search warrant, officers recovered an AK-47 semi-automatic firearm in the master bedroom of the residence.   Defendant was arrested during the execution of the search warrant.

**Defendant Roberson's June 13, 2005 Interview**

After Defendant was arrested, he was brought to the Hennepin County Adult Detention Center in Minneapolis, Minnesota.  Detective Giguere conducted an interview with Defendant on that same day. The interview started at 4:35 p.m. and lasted about one half hour.   The entire interview was recorded. (Gov. Ex. 2, CD Recording of June 13, 2005 Interview ("Gov. Ex. 2"), and Gov. Ex. 4, Transcript of June 13, 2005 Interview ("Gov. Ex. 4")).

Detective Giguere testified that the interview took place in an interview room at the Detention Center, and only he and the Defendant were present.   Detective Giguere first introduced himself and informed Defendant Roberson that he was under arrest for being a felon in possession of a firearm.   He told Defendant Roberson that he wanted to interview him regarding an ongoing investigation.   Detective Giguere then read Defendant his <u>Miranda</u> rights from a card that was provided by the Sheriff's Department.  (Gov. Ex. 3, Copy of <u>Miranda</u> rights card used during the interview ("Gov. Ex. 3")).

After reading Defendant his rights, Detective Giguere asked him whether he understood these rights and whether he was willing to talk to him at that time.   Defendant indicated he understood his rights and that he was willing to talk with Detective Giguere.  Detective Giguere testified that Defendant

Roberson appeared to understand the questions asked of him, and he never asked to speak to an attorney or to stop the interview.  He testified that weapons were never shown during the interview, and no threats or promises were made.  Defendant was not handcuffed during the interview, and he was not denied any of his physical needs.  Detective Giguere testified that he was aware that Defendant's criminal history included two felony convictions and multiple misdemeanors.

## III.   DISCUSSION

Defendant now brings a motion to suppress the June 13, 2005 statements (Doc. No. 21), and a motion to suppress the evidence found during the execution of the search warrant (Doc. Nos. 20 and 23).  This Court finds that the Defendant's motions should be denied because the search warrant was supported by sufficient probable cause, and the statements were voluntarily made when Defendant was in custody and had validly waived his <u>Miranda</u> rights.

**A.     The Search Warrant was Supported by Sufficient Probable Cause**

Defendant Roberson moves to suppress the physical evidence obtained as a result of the June 13, 2005, search of his residence on Girard Ave., in Minneapolis, Minnesota.  (Doc. Nos. 20 and 23).  Defendant challenges the search warrant contending that it was not supported by probable cause.  This Court concludes that there was probable cause to issue the search warrant, and the evidence found as a result of the search should not be suppressed.  As such, this Court recommends that Defendant's motions to suppress such evidence be denied.

A search warrant protects an individual's privacy interest in his or her home and possessions against unjustified police intrusions. <u>Steagald v. United States</u>, 451 U.S. 204, 213 (1981).  To satisfy the warrant requirement, an impartial judicial officer must assess whether the police have probable cause to

make an arrest, to conduct a search, or to seize evidence, instrumentalities, fruits of a crime, or contraband. <u>Warden v. Hayden</u>, 387 U.S. 294, 301-02 (1967).  Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>see</u> <u>United States v. Rankin</u>, 261 F.3d 735, 738-39 (8th Cir. 2001). There is probable cause to issue a search warrant when the affidavit supporting a search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.  <u>United States v. Terry</u>, 305 F.3d 818, 823-24 (8th Cir. 2002).

Whether probable cause exists depends on the totality of the circumstances. <u>Gates</u>, 462 U.S. at 238; <u>see also</u> <u>United States v. Gabrio</u>, 295 F.3d 880, 882-83 (8th Cir. 2002).  A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning. <u>United States v. Allen</u>, 297 F.3d 790, 794 (8th Cir. 2002).  Because reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. <u>United States v. Leon</u>, 468 U.S. 897, 913-14 (1984).  The Court is to "ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." <u>Terry</u>, 305 U.S. at 823.  Search warrant applications and their supporting affidavits "should be read with common sense and not in a grudging hyper technical fashion."  <u>United States v. Ryan</u>, 293 F.3d 1059, 1061 (8th Cir. 2002).  Technical errors in particularity alone are not enough to invalidate a search warrant.  <u>United States v. Valentine</u>, 984 F.2d 906, 909 (8th Cir. 1993) (search warrant valid where there was a typographical error in the address of the residence to be searched but where the affidavit described the target in detail); <u>see</u> <u>also</u>, <u>United States v. McCain</u>, 677 F.2d 657, 660 (8th Cir.

1982).

Probable cause can be established by the personal observations, experiences, and training of a police officer or circumstantial evidence. United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002); United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000); United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999). Probable cause can also be based on information from an independent source that can be independently corroborated. Gates, 462 U.S. at 238; Draper v. United States, 358 U.S. 307, 313 (1959); United States v. Young, 184 F.3d 781, 783 (8th Cir. 1999). "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause." Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996). In the end, these considerations "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 230, 236.

In this case, there is adequate evidence set forth in the supporting affidavit to establish probable cause. The affidavit in support of the search warrant sets forth the facts and circumstances related to the CRI's information, the investigation done to verify the CRI's information, and the process of identifying Defendant and his residence. The affidavit explained that information had been received from a CRI that Defendant Roberson was involved in the sale of narcotics and had possession of a firearm. While that alone might not have been sufficient to establish probable cause for a search warrant, the information was sufficiently corroborated by Detective Giguere's own observations and experiences. The CRI had

8

assisted law enforcement in numerous investigations and criminal convictions in the past, and information received from the CRI had been independently corroborated and found to be true multiple times in the past. The CRI was able to positively identify Defendant Roberson, from a booking photo, as the individual he had seen with contraband only 72 hours earlier. The CRI provided Detective Giguere with Defendant's address, and was able to direct him to Defendant's residence. The address of the residence matched the address given by the CRI, which, in turn, matched the address Defendant had listed as his residence only months earlier, as well as the address listed on his driver's license.

The affidavit must also be considered in light of Detective Giguere's training and experience. Based on that training and experience, Detective Giguere has observed that individuals involved in the distribution of crack cocaine are often in possession of weapons. Detective Giguere has been a deputy with the Hennepin County Sheriff's Department since 1980, and a Detective for the last eight years. The affidavit also noted that based on Detective Giguere's training and experience, he believed that there was probable cause to believe that the Girard Ave. residence contained controlled substances, evidence of controlled substances, and/or firearms.

Furthermore, even if it could be found that the search warrant lacked probable cause, evidence found during its execution need not be suppressed when police obtain the evidence through objective good faith reliance on a warrant. See Leon, 468 U.S. at 920; see also United States v. Rugh, 968 F.2d at 754. "[E]ven if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed." United States v. Johnson, 219 F3d 790, 791 (8th Cir. 2000) (citing Leon, 468 U.S. at 923).

9

In the instant case, there is no indication that the issuing judge abandoned her judicial role, that Detective Giguere knew of the falsity or was reckless with regard to the truth of anything in his affidavit, that the warrant was facially deficient, or that the warrant was so lacking in probable cause as to render official belief in it unreasonable.  See generally Leon, 468 U.S. at 923 (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable cause much less than that exhibited here).

This Court finds that, based on the totality of the circumstances and the facts set forth in the supporting affidavit, there was a substantial basis for finding probable cause to support the issuance of the search warrant.  As a result, this Court recommends that Defendant's motions to suppress the evidence found as a result of the search (Doc. Nos. 20 and 23) be denied.

**B.      Defendant's Motion to Suppress Statements, Admissions, and Answers Should Be Denied.**

Defendant Roberson moves to suppress the statements he made during the June 13, 2005 interview with Detective Giguere.  This Court finds that the statements he made during the June 13, 2005 interview were made voluntarily after Defendant received and validly waived his Miranda rights. Accordingly, Defendant's motion to suppress the statements (Doc. No. 21) should be denied.

**1.      Defendant Roberson was informed of his Miranda rights on June 13, 2005, and knowingly, voluntarily, and intelligently waived them.**

Before any evidence obtained as a result of a custodial interrogation may be used against a defendant at trial, the Fifth Amendment requires that a defendant in custody and subject to interrogation

by law enforcement agents be advised of his constitutional rights and make a knowing, intelligent and voluntary waiver of those rights. Miranda, 384 U.S. at 444.

A suspect in custody must be informed that he has the following rights: (1) the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. Id. at 444, 478-479. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." Id. at 467. Suspects need to be informed of these Miranda rights before questioning begins. Id. at 469-70. Statements elicited from a suspect in violation of Miranda are inadmissible. Stansbury, 511 U.S. at 322. After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. Miranda, 384 U.S. at 473-74.

After being informed of their Miranda rights, a suspect's waiver of their Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. Id. at 444; United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards. Miranda, 384 U.S. at 473; Connelly, 479 U.S. at 168 (1986). A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. While courts will not presume a waiver from a defendant's silence or subsequent confession alone, an express waiver is not necessary. North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979) (explicit waiver not necessary to show defendant

11

waived right to remain silent when defendant volunteered incriminating statements); U.S. v. Duque, 62 F.3d 1146, 1152-53 (9th Cir. 1995) (valid waiver inferred because, after having been given Miranda rights and asked if he was "of mind to speak with officers," defendant made incriminating statements).

Based on the transcript and the CD recording of the June 13, 2005 interview (Gov. Exs. 2 and 4), this Court finds that Defendant Roberson made his statements during the interview after he was informed of his Miranda rights and validly waived them. Defendant Roberson had been arrested at the time of the interview. He was interviewed alone by Detective Giguere. As he was in custody, he was properly read his Miranda rights at the start of the interview from a card that was provided by the Sheriff's Department. (Gov. Ex. 3). After the Miranda warning was given, Defendant Roberson was asked whether he understood the rights read to him. Defendant stated he did. Defendant was then asked if he was willing to talk to Detective Giguere, and he stated he was. Defendant then proceeded to answer the questions posed to him by Detective Giguere. A valid waiver exists because after being read his rights, Defendant Roberson indicated he understood his rights, that he was willing to talk to the Detective, and he did indeed continue talking with the Detective. Defendant Roberson did not ask to stop the interview and never requested an attorney. There is nothing in the evidence to suggest that Defendant's waiver was made unknowingly or involuntarily. He was advised of his rights, indicated he understood his rights, that he was willing to talk, and gave responsive answers, all of which in combination constitute a voluntary and knowing waiver of his rights.

**2.      Defendant Roberson voluntarily made the June 13, 2005 statements**

In addition to informing a suspect of their rights and receiving a valid waiver of those rights, a statement or confession that is involuntarily made by a suspect is violative of his or her due process

rights.  Haynes v. Washington, 373 U.S. 503, 513-514 (1963); United States v. Kime, 99 F.3d 870, 878-79 (8th Cir.1996).  If a statement is induced by threats, promises, or by any other way in which the suspect's will is overborne, the statements are not voluntary and are inadmissible.  Haynes, 373 U.S. at 513.  Whether a confession is the involuntary product of coercion is judged by the totality of the circumstances, including an examination of both the conduct of the officers and the characteristics of the accused.  Wilson v. Lawrence County, 260 F.3d 946 (8th Cir.2001).  The question of whether a statement is voluntary focuses on: (1) the conduct of law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure.  Mincey v. Arizona, 473 U.S. 385, 399-401 (1978) (confession involuntary when continued police interrogation of hospitalized suspect overwhelmed suspect's free will); Davis v. North Carolina, 384 U.S. 737, 752 (1966) (confession involuntary when police repeatedly interrogated jailed suspect held incommunicado over 16 days).  In addition, the coercion inducing the involuntary statement must be done by a state actor.  Connelly, 479 U.S. 157 (1986).  Among other factors commonly considered in assessing the totality of the circumstances surrounding testimonial evidence supplied by a defendant are: (1) the location of the questioning; (2) whether Miranda warnings were given; and (3) whether the accused initiated contact with law enforcement officials.  Battel v. Delo, 19 F.3d 1547, 1563-64 (8th Cir. 1994) (confession voluntary when defendant with eighth-grade education given multiple oral and written Miranda warnings and waived Miranda rights, modified, 64 F.3d 347 (8th Cir. 1995)); United States v. Hatten, 68 F.3d 257, 262 (8th Cir.1995) (confession voluntary when defendant initiated exchange which led to his incriminating statements).

        Based on the transcript and the CD recording of the June 13, 2005 interview (Gov. Exs. 2 and

4), this Court finds that Defendant was not coerced into making his statements. Rather, the statements were voluntarily made after properly receiving and validly waiving his <u>Miranda</u> rights. Defendant Roberson was in custody at the time the statements were made. He was informed of his <u>Miranda</u> rights, indicated he understood those rights, and validly waived them by agreeing to talk without an attorney present. The interview was recorded and no promises or threats were made during the interview. There is nothing in the record to suggest that Detective Giguere's conduct created any undue pressure on Defendant Roberson, that Defendant was particularly susceptible to coercion, or that his will was in any way overborne. Defendant Roberson answered each question asked and the interview ended when Detective Giguere stated he had no further questions to ask.

Given the foregoing, Defendant Roberson's statements from June 13, 2005, were voluntarily made after waiving his <u>Miranda</u> rights. Defendant's motion to suppress his statements (Doc. No. 21) should be denied.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Defendant Roberson's Motions to Suppress Evidence (Doc. Nos. 20 and 23) be **DENIED**; and

2.    Defendant Roberson's Motion to Suppress Statements (Doc. No. 21) be **DENIED**.

Dated:   January 26, 2006                                  s/Susan Richard Nelson
                                                         SUSAN RICHARD NELSON
                                                         United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 9, 2006**, written objections which

specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.